CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
JUL 06 2007
JOHN F. CORCORAN, CLERK
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| JANET FARRIOR von GAL,<br>    Appellant, | Civil Action No. 5:06cv00128 |
| v. | **MEMORANDUM OPINION** |
| BB&T CORPORATION, a<br>North Carolina corporation.,<br>and<br>BRANCH BANKING AND TRUST<br>    Appellees. | By: Samuel G. Wilson<br>United States District Judge |

This is an appeal by Janet Farrior von Gal ("von Gal") from an order of the Bankruptcy Court for the Western District of Virginia dismissing, for lack of standing, a complaint filed by the Chapter 7 trustee ("trustee") and von Gal against BB&T Corporation and Branch Banking and Trust (collectively "BB&T"), seeking recovery from BB&T for alleged unauthorized withdrawals by the debtor, Charles R. Farrior ("debtor"), from BB&T accounts held in the name of or for the benefit of Ruth Farrior ("decedent"). The bankruptcy court determined that the trustee and von Gal lacked standing to pursue their claims because, under Virginia law, that right belonged to the executor of the decedent's estate. Von Gal does not appeal the dismissal of her individual claims against BB&T, but instead has appealed the dismissal of the trustee's claims, which the trustee has not appealed. Assuming that von Gal has standing to bring this appeal,[1] the

---

[1] Von Gal has established Article III standing, as BB&T's alleged wrongful conduct caused an economic injury in fact that this court can redress. However, this court finds it unnecessary to decide the issue of whether von Gal has established prudential, or statutory, standing to appeal the dismissal of the trustee's claims under the bankruptcy code. See e.g., Grubbs v. Bailes, 445 FF.3d 1275, 1281 (10th Cir. 2006) (noting that federal courts are prohibited from disposing of claims on the merits without first resolving Article III standing issues but that "[q]uestions relating to *prudential* standing . . . may be pretermitted in favor of a straightforward disposition on the merits"); Am. Iron & Steel Inst. v. OSHA, 182 F.3d 1261, 1274 n.10 (11th Cir. 1999); Fraternal Order of Police v. United States, 173 F.3d 898, 905 (D.C.

court agrees that the trustee lacks standing to pursue the claims against BB&T, but for reasons different than those stated by the bankruptcy court. The trustee has no standing to pursue the claims because they are not property of the bankruptcy estate. Accordingly, the court denies von Gal's appeal and affirms the bankruptcy court.

## I.

Ruth Farrior maintained accounts with BB&T until her death on May 5, 2004. Under the terms of her will, her son and daughter, Charles Farrior and Janet Farrior von Gal, were co-executors and equal beneficiaries of her estate. Before and after the decedent's death, Charles Farrior allegedly made unauthorized withdrawals from her accounts at BB&T and converted the funds to his own use.

On February 17, 2004, Charles Farrior and his wife filed a joint voluntary petition under Chapter 7 of the bankruptcy code. On May 5, 2005, Roy V. Wolfe, in his capacity as trustee of the bankruptcy estate, and von Gal, in her individual capacity as the largest creditor of the bankruptcy estate, filed an adversary proceeding against BB&T alleging improper negotiation, conversion of funds, and failure to exercise reasonable care. BB&T moved to dismiss the complaint, arguing, *inter alia*, that von Gal and the trustee lacked standing.

In the adversary proceeding, the parties agreed that the trustee's standing depended upon whether the claims against BB&T belonged to the decedent's estate or the bankruptcy estate. Von Gal asserted that the claims belonged to the bankruptcy estate rather than to the decedent's

---

Cir. 1999); McNamara v. City of Chicago, 138 F.3d 1219, 1222 (7th Cir. 1998).

2

estate by operation of § 541 of the bankruptcy code and Virginia's "early vesting rule."[2] Von Gal reasoned that one-half of the money in the decedent's accounts on deposit with BB&T was property of the bankruptcy estate by operation of § 541 because the debtor inherited this interest within 180 days of filing his bankruptcy petition. Therefore, according to von Gal, the debtor's interest in the BB&T accounts vested at the moment of the decedent's death by operation of Virginia's early vesting rule. In contrast, BB&T asserted that the decedent's BB&T accounts became, upon her death, property of the decedent's estate by operation of state law and that consequently, only the executor of her estate could pursue the claims against BB&T. The bankruptcy court agreed with BB&T and determined that the trustee and von Gal lacked standing to pursue their claims because that right belonged to the executor of the decedent's estate.

## II.

Even if Charles Farrior inherited a beneficial interest in his mother's estate within 180 days of filing his bankruptcy petition, he has no legal or equitable interest in the claims against

---

[2] 11 U.S.C. § 541 creates the bankruptcy estate, which consists of all of the property that will be subject to the jurisdiction of the bankruptcy court. Congress defined property of the estate broadly, including within the estate "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. 11 U.S.C. § 541(a)(1). Furthermore, § 541(a)(5)(A) specifies that the bankruptcy estate also includes:

> Any interest in property that would have been property of the estate if such interest had been an interest of the debtor on the date of the filing of the petition, and that the debtor acquires or becomes entitled to acquire within 180 days after such date . . . by bequest, devise, or inheritance.

Virginia's early vesting rule is an "established principle of will construction . . . [that] provides that unless the intention to postpone vesting is clearly indicated in the will, all devises and bequests are to be construed as vesting at the testator's death." Coleman v. Coleman, 500 S.E.2d 507, 508 (Va. 1998).

BB&T, and they are therefore not property of the bankruptcy estate.[3] Essentially, the trustee, standing in the debtor's shoes, is attempting to hold BB&T liable for allowing the debtor allegedly to steal from his mother. Although the bankruptcy trustee is the representative of the bankruptcy estate and is entitled to administer the bankruptcy estate property, including the right "to sue and be sued," 11 U.S.C. § 323, the trustee can assert no greater rights in the property than the debtor had. See Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron), 155 F.3d 718, 721 (4th Cir. 1998). Here, the debtor has no legal or equitable interest in any funds withdrawn wrongfully from BB&T because he may not benefit from his own wrongdoing. Under Virginia law, "courts will not assist [a] participant in an illegal act who seeks to profit from the act's commission." Adkins v. Dixon, 482 S.E.2d 797, 801 (Va. 1997) (quoting Zysk v. Zysk, 404 S.E.2d 721, 722 (Va. 1990)). Because the debtor is precluded from sharing in any recovery from BB&T for his own alleged misappropriation, the trustee is precluded as well.

### III.

Accordingly, the court **AFFIRMS** the decision of the bankruptcy court.

**ENTER:** This 6th day of July, 2007.

United States District Judge

---

[3] This court reviews the findings of fact made by the bankruptcy court for clear error. Fed. R. Bankr. P. 8013. Conclusions of law are reviewed de novo. Kielisch v. Educ. Credit Mgmt. Corp. (In re Kielisch), 258 F.3d 316, 319 (4th Cir. 2001). Whether the bankruptcy trustee may pursue the claims alleged in the complaint against BB&T is a question of law that the court reviews de novo.

4